PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 1:22-CR-201 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| DARYLE LOGAN, | ) | |
| | ) | **ORDER** |
| Defendant. | ) | [Resolving ECF No. 16] |

Pending before the Court is Defendant Daryle Logan's Motion to Suppress. ECF No. 16. Having reviewed the evidence and the parties' submissions, the Court denies Defendant's Motion.

## I. Procedural History

Defendant filed a Motion to Suppress (ECF No. 16) and the Government responded in opposition (ECF No. 18). The Court held an evidentiary hearing at which the Court heard argument from the parties and sworn testimony from Officer Nathan Ciarrone. At the conclusion of the evidentiary hearing, the Court ordered the Government to file a notice explaining Defendant's terms of release at the time of his arrest and permitted the parties to file post-hearing supplemental briefs. *See Minutes of Proceedings*, June 8, 2022.[1]

---

[1] *See* ECF No. 22 (Government's Notice of Compliance); ECF No. 27 (Defendant's supplement); ECF No. 28 (Government's supplement).

(1:22-CR-201)

## II. Factual Background

On November 8, 2020, at 2:00 a.m. Officer Ciarrone noticed a Ford Taurus traveling at a high rate of speed, without illuminated headlights. ECF No 25 at PageID #: 117-18 (Transcript). After noticing this infraction, Officer Ciarrone pursued and signaled to the driver by illuminating his cruiser's overhead lights. *Id*. The driver did not immediately pull over and, when he did, he did not immediately switch gears to park.[2] After the Taurus was placed in park, Officer Ciarrone exited his cruiser and approached. ECF No. 25. at PageID #: 119-120.

As Officer Ciarrone approached, he smelled a strong odor of marijuana. ECF No. 25 at PageID #:121-122. Defendant was driving. Defendant told the officer that the Taurus was rented. *Id*. When asked, Defendant said that he did not possess the rental agreement because he had not been given one. *Id*. Officer Ciarrone became skeptical because, in his personal and professional experience, rental companies provide rental agreements as a matter of course. *Id*.

Officer Ciarrone also testified that he observed a "tear-off baggy in the center console area" which appeared to contain a small amount of marijuana. *Id*. When Officer Ciarrone questioned Defendant about the baggy, Defendant admitted that it contained marijuana. *Id*. Subsequently, Officer Ciarrone learned that Defendant was being supervised by the State of Ohio and had served more than 11 years in prison at Lucasville. ECF No 25 at PageID #: 125.

---

[2] This delay in switching gears to park aroused the officer's suspicion and caused him to radio for assistance.

(1:22-CR-201)

At this point, the traffic stop transformed into a drug investigation. ECF No 25 at PageID #: 121. Officer Ciarrone instructed Defendant to exit the Taurus. ECF No. 25. at PageID#: 123. Defendant did not respond or comply, but rather displayed a "thousand-yard stare." Id. Concerned that Defendant may be considering fleeing, Officer Ciarrone reached inside of the vehicle, opened the driver's door, and removed Defendant from the Taurus. Id. With the driver's door opened, Officer Ciarrone observed a tan handgun inside of the driver's-side door compartment. ECF No. 25 at PageID #: 124. Defendant was placed under arrest. Defendant's person and vehicle were searched incident to that arrest. Id. at PageID#: 126.

Although Officer Ciarrone possessed a body camera, he did not activate it during the stop. ECF No. 25 at PageID #:119-120. Officer Martin, who arrived to assist, did, however, activate his body camera. The Court was provided footage from Officer Martin's body camera. ECF No. 22. Defendant did not object to its content.

The Government provided a signed copy of the terms of Defendant Logan's release on state supervision.[3] Id. In those terms, Defendant agreed that, while under state supervision, he would "obey all federal state and local laws and ordinances, including those related to illegal drug use." See Id. Defendant also agreed that he would "not purchase, possess, own, use, or have under his control any firearms [or] ammunition." See Id. Additionally, Defendant consented to a "warrantless search of his person, motor vehicle, place of residence, personal property or property that [he has been] given permission to

---

[3] The Government provided the "Conditions of Supervision" via an electronic storage device that is maintained in the Court's file. Id.

3

(1:22-CR-201)

use, by his supervising officer or other authorized personnel of the Ohio Department of Rehabilitation and Correction at any time." *See Id.*

### III. Standard of Review

Traffic stops of automobiles are "well-established" exceptions to the warrant requirement. *Campbell v. Mack*, 777 F. App'x 122, 131 (6th Cir. 2019). A law enforcement officer may stop and briefly detain a person for investigative search based on articulable facts that criminal activity is afoot. *United States v. Lott*, 954 F.3d 919, 923 (6th Cir. 2020). Officers may reasonably conclude the forthcoming of criminal activity when they observe conduct raising their reasonable suspicions. *United States v. Farrington*, 795 F. App'x 404, 408 (6th Cir. 2019). The suspicion must be based on specific and articulable facts which taken together with rational inferences from those facts reasonably warrant the intrusion. *See United States v. Bloodworth*, 798 F. App'x 842, 845-46 (6th Cir. 2019)(quoting *Terry v. Ohio*, 392 U.S. 1, 21–22, (1968). "The standard is an objective one, that determines whether "the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate."" *Id.* Whether an officer has reasonable, articulable suspicion of criminal activity is based on the totality of the circumstances. *United States v. Jones*, 673 F.3d 497, 502 (6th Cir. 2012).

Developments during an investigatory stop may ripen into probable cause to search a vehicle for evidence of a crime. *United States v. Lyons*, 687 F.3d 754,769-70(6th Cir 2012). The automobile exception to the warrant requirement permits officers to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of a crime. *Taylor v. City of Saginaw*, 922 F.3d 328 (6th Cir 2019). A court's determination of whether probable cause existed at the time of the search is a common-

(1:22-CR-201)

sense practical question to be judged from the totality of the circumstances. *Nykoriak v. Wileczek*, 666 Fed. Appx. 441 (6th Cir 2016).

### IV. Analysis

Defendant makes several arguments in support of his motion to suppress the gun found by Officer Ciarrone.

**1. Defendant Possessed Only a Misdemeanor Quantity of Marijuana**

Defendant argues that Officer Ciarrone should not have continued to investigate him after the officer learned that Defendant possessed only a misdemeanor quantity of marijuana. Defendant's argument rests on the flawed assumption---that when an officer witnesses a crime, that crime does not create probable cause for a search, if that crime is a misdemeanor. *See* ECF No. 16 at PageID#: 69.[4] This argument is without merit.

The Supreme Court of the United States has held that a state's policy on whether someone should be arrested for a misdemeanor offense is irrelevant for purposes of analyzing Fourth Amendment protections. *See Virginia v. Moore*, 553 U.S. 164, 176 (2008)(explaining that "while States are free to regulate arrests however they desire, state restrictions on arrests do not alter the Fourth Amendment's protections."). "[L]inking Fourth Amendment protections to state law would cause [those protections] to 'vary from place to place and from time to time.'" *Id*.(citing *Whren v. United States*, 517 U.S. 806 at 815 (1996)). There is no justification for the argument that Defendant has a right to be

---

[4] Defendant acknowledges that he "is not aware of any cases that analyzed the validity of a search while considering the substantive right under Ohio law regarding freedom from arrest for minor misdemeanors." *Id*.

(1:22-CR-201)

free from a search when the crime committed is a state misdemeanor offense.[5]  This argument fails.

### 2. Lack of Justification to order Defendant to Exit Taurus

Defendant argues Officer Ciarrone did not have justification to order Defendant to exit the Taurus because there was a not a risk of flight or an apparent risk to officer safety.  This argument is not persuasive.

Once a motor vehicle has been lawfully detained for a traffic violation, police officers may order the driver to exit the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.  See Maryland v. Wilson, 519 U.S. 408, 414-15 (1997)(citing Pennsylvania v. Mimms, 434 U.S. at 111, n.6, 98 S.Ct. 330 (1977)).

In this case, Defendant's vehicle was lawfully stopped for a traffic violation.  This authorized Officer Ciarrone to order Defendant out of the car, and to remove Defendant from the car after he did not comply with the instruction.  See United States v. Montgomery, 377 F.3d 582, 585 (6th Cir. 2004) (holding that officers are justified in ordering defendant out of the vehicle pursuant to a routine traffic stop); see e.g. United States v. Parks, 414 F. Supp. 3d 1044, 1048 (N.D. Ohio 2019) (acknowledging that officers can order Defendants out of vehicles as a part of the detainment for the traffic violation without any other suspicion.)  Removing Defendant by opening the driver's door was reasonable because officers may take steps to remove a defendant from a

---

[5] It also is worth noting that because Defendant was under state supervision, any amount of marijuana, whether it be a misdemeanor or felony quantity, constituted a violation the terms of his state supervision.

6

(1:22-CR-201)

vehicle when instructions to vacate the vehicle are not followed. *Ashford v. Raby*, 951 F.3d 798, 802 (6th Cir. 2020) (holding that if defendant is unwilling to exit the vehicle on his own, the officers have "little choice" but to remove him).

### 3. Traffic Stop was Extended Without Reasonable Suspicion

Defendant argues that the traffic stop was extended without reasonable suspicion. Essentially, Defendant argues that, when Officer Ciarrone opened the driver's door, the officer abandoned his traffic-related investigation. In such circumstances, Defendant argues, an independent reasonable suspicion of unlawful activity beyond the traffic violation was required to lawfully continue the stop. *United States v. Whitley*, 34 F.4th 522, 536 (6th Cir.2022).

Defendant's argument is without merit.[6] Officer Ciarrone did not extend the stop without reasonable suspicion. Rather, during the traffic stop, Officer Ciarrone smelled marijuana. The Officer then saw what he believed was marijuana in a baggy and obtained confirmation from Defendant that what the officer saw was in fact marijuana. These occurrences were embedded within, but distinct from the reason for the traffic stop. Officer Ciarrone, therefore, had not only an independent reasonable suspicion to extend the stop, but also probable cause to search the vehicle. *See United States v. Hall*, 20 F.4th 1085, 1099 (6th Cir. 2022) (citing *United States v. Brooks*, 987 F.3d 593, 599 (6th Cir. 2021) (noting that "our court has long held that officers have the required probable cause when they detect the odor of illegal marijuana coming from the

---

[6] Defendant not only misapplied the law in *Whitley*, but also misrepresented the Sixth Circuit's holding by arguing incorrectly that the circuit reversed the district court's denial of the motion to suppress. *Compare* ECF No. 27 at PageID#: 160("In reversing the District Court denial of the Motion to Suppress…"); *United States v. Whitley*, 34 F.4th 522, 536 (6th Cir.2022)("For all of the foregoing reasons, we **AFFIRM** the judgment of the district court.") (emphasis original).

7

(1:22-CR-201)

vehicle" and that such a smell permits a warrantless search of the vehicle)); *see also United States v. Stevenson*, 43 F.4th 641 (6th Cir. 2022)("any newly discovered information can create reasonable suspicion to detain the driver longer in order to investigate the other crimes.")(citations omitted).

Chiefly, the touchstone of the Fourth Amendment is reasonableness. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 398 (2006). In the case at bar, Officer Ciarrone's actions were reasonable. He effected a valid traffic stop due to a traffic offense. During that stop, Officer Ciarrone smelled marijuana, an illegal substance in the state of Ohio. *See* Ohio Rev. Code § 2925.11.

Based on the totality of the circumstances, Officer Ciarrone had probable cause to search the Taurus. As a result, it was lawful for Officer Ciarrone to ask Defendant to step out of the vehicle, and it was also lawful for Officer Ciarrone to take the necessary steps to remove Defendant when he did not comply. While removing Defendant from the Taurus, Officer Ciarrone saw, in plain view, the weapon Defendant now seeks to suppress. Officer Ciarrone's actions constituted a reasonable and lawful search and seizure.

**4. Arresting Officer Testimony Not Credible due to Deactivated Body Camera**

Defendant argues that Officer Ciarrone's testimony given during the evidentiary hearing was not credible because the officer failed to activate his body camera. While Officer Ciarrone's body camera was not activated, Officer Martin's was activated and captured a significant portion of the interactions with Defendant. Defendant points to no inconsistencies between what Officer Ciarrone testified to and Officer Martin's camera captured. This argument lacks merit.

8

(1:22-CR-201)

Defendant also argues that Officer Ciarrone was required to report his failure to activate his camera. Whether Officer Ciarrone was required to report his failure to follow policy has no bearing on the motion to suppress.[7] More importantly, the Court's review of the video evidence shows that Officer Martin's body camera footage corroborated the facts as described under oath by Officer Ciarrone. Therefore, the Court finds Officer Ciarrone's testimony credible.

### V. Conclusion

For the reasons given above, Defendant's Motion to Suppress (ECF No. 16) is denied.

IT IS SO ORDERED.

| | |
|---|---|
| August 25, 2022 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson<br>United States District Judge |

---

[7] This ruling concerns only the motion to suppress and is not meant to opine on the police department's policy or Officer Ciarrone's failure to abide by that policy. By the officer's admission, he has failed to activate his body camera "three or four" times. ECF No. 25 at Page ID # 130.